54 N.J. Super. 1 (1959)
148 A.2d 50
BOROUGH OF NORTH PLAINFIELD, PLAINTIFF-RESPONDENT,
v.
DOMINIC PERONE, TRADING AS RICHARD'S AUTO BODY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1958.
Decided January 28, 1959.
*3 Before Judges GOLDMANN, FREUND and CONFORD.
*4 Mr. William Noel Ogden argued the cause for defendant-appellant.
Mr. Charles A. Reid, Jr., argued the cause for plaintiff-respondent (Messrs. Reid & Reid, attorneys; Messrs. John Andrew Reid and Harman R. Clark, Jr., of counsel).
The opinion of the court was delivered by FREUND, J.A.D.
This is an appeal by defendant Dominic Perone, doing business as "Richard's Auto Body," from judgments of the Somerset County Court convicting him of operating motor vehicle service stations contrary to the applicable zoning ordinance of the Borough of North Plainfield. The Somerset County Court heard the case on a trial de novo, following convictions in the borough's municipal court. The judgments concern two adjoining premises, one called the Newton Street property and the other called the Watchung Avenue property.
The North Plainfield building inspector, Ernest S. Bird, signed two complaints against the defendant on July 3, 1957, each charging the unlawful operation of motor vehicle service stations on the two premises in question on July 1, 1957. In affirming the two convictions, the county judge imposed a fine of $100 on each complaint, both fines, however, to be suspended provided the defendant terminate each violation within 90 days. The judgment was stayed pending the appeal to this court.
The situation is best stated by first describing the premises, then outlining the legal problems in regard to the zoning ordinance and the action of the board of adjustment, and finally by describing defendant's use of the two premises.
Newton Street and Watchung Avenue are parallel to each other, running to the north off the side of State Highway 22 in North Plainfield; Newton Street is the easternmost of the two streets. The Newton Street property is a rectangular lot, the westerly line of which adjoins the defendant's Watchung Avenue property. The southerly line of both properties forms a continuous boundary line with property *5 referred to as the Shell Station property. This southerly line, however, is not parallel with Route 22 but is approximately 108 feet distant at Newton Street and approximately 48 feet distant at Watchung Avenue. The Shell Station property is the only property separating defendant's premises from the highway, and it runs the entire distance from Watchung Avenue to Newton Street along Route 22. On the other side of Newton Street at the northeast corner of the Route 22 intersection, there is another service station; behind it to the north are single-family dwellings facing the defendant's Newton Street property.
In the middle of the Newton Street lot there is a small structure 20 feet by 40 feet. It was erected by Lester W. Kirchner prior to 1946, when he was the owner of the Newton Street lot and a lessee of the Shell Station. At the front, or easterly end of the lot, there is a larger structure, which was the subject of an application to the board of adjustment by Kirchner in 1946. Permission to erect the larger structure was granted by the board in 1946, subject to certain conditions, which defendant has been convicted of violating. Upon the Watchung Avenue premises are a dwelling house and a garage, originally designed as a garage for the dwelling. Most of the rear area of the premises is covered by black-top.
In 1923 the Borough of North Plainfield adopted its original zoning ordinance, and the premises in question were placed in the "B" residence zone. In 1935, by amendment, the premises were changed to the "Business Zone," and became subject to the regulations of the business zone provided in the 1923 ordinance.
The 1923 ordinance prohibited the use of any building or premises for a "garage or group of garages for more than 5 motor vehicles" or for a "motor vehicle service station," unless special permission were granted under section XI by the board of adjustment. The ordinance of 1923, as amended, was in effect in 1946 and controlled the action of the board of adjustment in 1946 in relation to the Newton Street property. In 1950 by amendment to the zoning ordinance, *6 as revised in 1948, a special provision was made in regard to motor vehicle service stations. It is this provision which is applicable to the Watchung Avenue property.
In 1946 Kirchner, the then owner of the Newton Street property, made an application to the board of adjustment "to erect a building for the servicing of automobiles" at 345 Newton Street as an addition to the smaller structure then existing on the property. On October 28, 1946 the board held a public hearing on the application, at which objecting property owners presented a petition in opposition to Kirchner's application. Ironically, one of the objectors was Peter Perone, the father of the defendant Dominic Perone. The board decided to grant the exception, subject to the following conditions: (1) that no automobile entrance to the building be on Newton Street; (2) that repairing of automobiles be done inside the building; (3) that no automobiles be stored outside the building. Thus, the building was erected with its access doors facing the Shell Station on Route 22. Kirchner proceeded to use the building in conjunction with his operation at the Shell Station.
In 1949 Kirchner gave up his lease of the Shell Station, and in the same year he sold the Newton Street property to the C.C. Downs Co. This company operated an awning business at the Newton Street property until 1951. The property was then sold to defendant's uncle, who, in turn, conveyed it to defendant's father. The latter, on October 8, 1951 (the date of the deed to him), applied to the building inspector for permission to "change a door from one place of building to another." However, the application did not designate which door was to be closed and where a new one was to be opened.
The testimony discloses that defendant, first as tenant and subsequently as owner, operated an "auto body shop" on the Newton Street property in the name of "Richard's Auto Body." (The elder Perone was the owner-lessor of the Newton Street property at the time the complaints in this action were filed in the local municipal court. Pending the appeal to the County Court, he sold the property to *7 his son, the defendant.) Defendant picks up autos involved in accidents on the highways and hauls them to his service station. At the Newton Street property, inside and outside of the building, he uses power tools and acetylene torches in either dismantling or repairing the automobiles. Defendant paints automobiles using lacquer paints, which he admitted are highly inflammable. Additionally, he stores automobiles on the Newton Street property outside of the buildings.
The small garage building at the rear of the dwelling on the Watchung Avenue property is used by the defendant for the repair of automobiles and the testing of radiators  all in connection with the business conducted on the Newton Street property. Automobiles are also stored on the Watchung Avenue property.
To summarize briefly, Kirchner at one time used the Newton Street property, pursuant to an exception he obtained therefor in 1946, as an adjunct to the Shell Station which he leased. The defendant now, however, uses the Watchung Street property, without benefit of an exception obtained by anyone, as an adjunct to his auto body shop on the Newton Street lot, a lot which it must be remembered was granted an exception subject to three conditions. As noted, the defendant was convicted for violations of the local zoning ordinances as to both premises.

I.
Defendant assigns four main reasons for reversing the convictions, the first of which is that he cannot be charged with violating the three conditions attached to the granting of the exception by the board in 1946 for the reason that the board, in granting Kirchner's application, had no power to impose such conditions. It is difficult to understand precisely what basis the defendant is assigning for the alleged lack of power in the zoning board to fix the conditions. The argument may be that only those specific conditions and stipulations mentioned in the ordinance itself *8 may be availed of by the board. If so, the contention is palpably without merit. The 1923 ordinance, particularly the first sentence of section XI, makes clear that the board was expressly authorized to attach "appropriate conditions and safeguards" to the granting of such an application.
We suspect that the real thrust of the defendant's argument is not that the board of adjustment lacked the power to impose conditions because of any restraint on its authority found in the local zoning ordinance, but rather that the governing body of North Plainfield could not, consistently with N.J.S.A. 40:55-39(b), delegate to the board the responsibility of fixing such conditions. This is undoubtedly the reason for the defendant's reference to the statement in Moriarty v. Pozner, 21 N.J. 199, 210 (1956), that "* * * the conditions for such special use must be found in the local legislative act and may not be varied." Similar language is employed in 101 C.J.S. Zoning § 271 p. 1036.
We do not, however, read the Moriarty case as requiring all the conditions attached to the granting of a special exception to be set forth explicitly in the local ordinance. Justice Heher in speaking in that case of an exception as a legislative function meant only that a board of adjustment is not free to grant an exception in every case in which one is sought without some provision in the ordinance from which it might reasonably be indicated that the local legislative body contemplated that an exception would be permissible for the type of activity in question. (In the present case, the 1923 ordinance in section III(8) expressly adverted to a motor vehicle service station as the kind of prohibited use for which an exception could be granted.) Were we to accept defendant's interpretation of Moriarty, a board of adjustment would be without jurisdiction, in granting an exception of a type contemplated by the ordinance, at the same time to mitigate, by prescribed conditions, any objectionable aspects of the intended use. That interpretation is contrary to the long accepted and more soundly reasoned view that a board of adjustment has the inherent power to tailor its grant of an exception or variance by appropriate *9 conditions and safeguards. See Ostrowsky v. City of Newark, 102 N.J. Eq. 169 (Ch. 1928); Soho Park & Land Co. v. Board of Adjustment of Town of Belleville, 6 N.J. Misc. 686 (Sup. Ct. 1928); 8 McQuillin, Municipal Corporations (3d rev. ed. 1957), § 25.271, p. 661; 1 Rathkopf, Zoning and Planning (3d ed. 1956), c. 49, p. 755 et seq. Cf. R.S. 40:55-40. Contra, Service Realty Corporation v. Planning & Zoning Board of Appeals of Town of Greenwich, 141 Conn. 632, 109 A.2d 256 (Sup. Ct. Err. 1954). For the reasons stated, we have no doubt that in this case the board was invested with the authority thus exercised.
Moreover, the imposition of the conditions can be justified on the basis of that portion of the language of the ordinance which permits the board to attach "appropriate conditions and safeguards." While this is general language, there is nothing in the Moriarty opinion indicating a conclusion that the conditions authorized by the ordinance for an exception need be couched in any particular degree of specificity, so long as the language is clear and definite. This language was sufficiently definite. See Ward v. Scott, 11 N.J. 117 (1952). The appropriateness contemplated was in terms of the statutory objectives of zoning as set forth in R.S. 40:55-32. Ibid.

II.
The second point offered by the defendant is that the three conditions superimposed by the board on the 1946 exception for the Newton Street building were illegal when imposed for the additional reason that they bore no reasonable relationship to the public health, safety, morals, or general good and welfare but, instead, were designed to placate the neighboring homeowners who had registered their objections to Kirchner's application at the hearing in 1946. Defendant's position is that the three conditions must be viewed not as a valid exercise of the borough's police power under the zoning statute but rather as the response of a local board disinclined for political reasons to ignore "the *10 extreme pressure brought to bear by dissident homeowners, usually women * * *." The argument concludes with the point that the changed circumstances as of 1957 make the three inhibitions even more arbitrary and unreasonable.
The trial judge found that the restrictions (no automobile entrance on Newton Street; no repairing or storing of automobiles outside of building) did bear a reasonable relation to the prevention of evils from which the board was authorized, and even required, to protect the nearby residents. He found that Newton Street is quite narrow (30 feet) and that the parking of defendant's vehicles thereon, and the use of an automobile entrance from that side would create a traffic hazard. And as to the other two conditions, it is beyond dispute that the cluttering of semi-demolished automobiles together with the noise attendant upon their repair and the presence of inflammable materials used in connection therewith justified the board's conclusion that these kinds of operations were unsuitable for outside location in an area adjacent to a residential zone.
It is therefore clear that there was a real necessity for the imposition of the restrictions in terms of relevance to zoning objectives, and their reasonableness is to be adjudged in the light of this need. That the conditions were apparently satisfactory to Kirchner at the time of his application for an exception in 1946 further conduces to the conclusion that there is no basis for the charge of unreasonableness. Cf. Hrycenko v. Board of Adjustment of City of Elizabeth, 27 N.J. Super. 376, 382 (App. Div. 1953); 8 McQuillin, Municipal Corporations (1958 Cum. Supp.), § 25.271, p. 61.
Essentially, defendant is arguing that since the separation of use and control of the Newton Street property from the Shell Station property on Route 22, the Newton Street property cannot reasonably be operated as a motor vehicle repair shop without having a right to an entrance on Newton Street. But we cannot assume that the exception would have been granted in the first place if the proposed building were not to be operated in conjunction with the Shell Station. *11 Neither defendant nor his predecessors in title ever had an absolute right under the local ordinance to conduct a service station on Newton Street as an isolated unit. The right was absolutely dependent upon the grant of an exception. So long as that exception continued in effect, the conditions which were imposed in connection therewith were inseparable from the right of enjoyment of the exception. If, then, the defendant's argument that the conditions were unreasonable in 1946 or in 1957 were to have prevailed, he would have won but a Pyrrhic victory; for if the conditions are to be declared unlawful, the exception upon which they were engrafted must also be set aside. 101 C.J.S. Zoning § 310 pp. 1095-1096. It would legally follow that the defendant's use of the Newton Street property as a service station becomes indefensible under the local zoning ordinance prohibiting such use. Under the circumstances, defendant's only proper recourse to avoid conviction for violation of the ordinance was to go back to the board of adjustment and request that the exception be relieved of the conditions objectionable to him.
Moving to an additional point, one not raised in the briefs but discussed at the oral argument, we find that, whatever determination is made respecting the legality or reasonableness of the conditions imposed in the first instance in 1946, the defendant's position is nevertheless vulnerable, and the judgment must be affirmed, for an entirely different reason. Defendant concedes that the applicable zoning ordinance would prohibit the use of the Newton Street property as a motor vehicle service station were it not for the exception originally obtained by Kirchner. In our judgment, once Kirchner discontinued the use of the Newton Street property for automobile repairs, as he did in 1949 when the building was leased to a corporation which ran an awning business on the premises until 1951, the right to use the property as sanctioned by the exception abated. When counsel for the defendant was asked at the oral argument for his position on this point, he said that he conceived that there was a distinction between an exception and a *12 variance in this respect. He contended that once an exception is granted, it inures to the benefit of the property and runs with the land. Under this conception, the use in connection with which the exception was granted could be discontinued and nevertheless be resumed many years later by the owner or a subsequent grantee of the property. And considering that the original grant, whether by variance or exception, of the right to construct a building is ordinarily the result of a representation, express or implied, that the building would be used for a particular purpose, we find the theory suggested by counsel not appropriate in this context.
The question is whether an intervening use, consonant with the existing zoning design, breaks the chain of circumstances so as to defeat the right automatically to resume the use originally sanctioned by the exception. We are not concerned with whether a change in ownership of the property for which an exception had been granted affects the right to continue the use, as to which see Annotation, 9 A.L.R.2d 1039 (1950), and 8 McQuillin, op. cit., supra, § 25.163, p. 379, nor need we deal at length with the question whether the changes in use are sufficiently dissimilar as to indicate an abandonment of the prior use. In this case there is no doubt that the changes from a service station to an awning business and then back again to an auto body shop cannot reasonably be deemed a continuous use protected by a single exception. Compare Heagen v. Borough of Allendale, 42 N.J. Super. 472 (App. Div. 1956), and cases cited at pages 481-482. See also Annotation, 18 A.L.R.2d 725 (1951).
In response to the question posed, we regard the answer as apparent under either of two approaches. Under the first, the use permitted by the original exception can, for this purpose, be treated as a nonconforming use, the right to continue which is, it is uniformly held, defeated by the intervention of a conforming use or other invalid nonconforming use for a sufficient period of time to justify a conclusion of abandonment of the former use. See, e.g., *13 Barbarisi v. Board of Adjustment, 30 N.J. Super. 11 (App. Div. 1954). A use allowable only by virtue of an exception granted cannot, if subsequently abandoned, leave a property owner with a right to resume such use when he would not have had a similar right if the original use were a nonconforming one, the uninterrupted continuance of which is expressly protected by statute. R.S. 40:55-48. In the respect indicated, we find no basis for distinguishing between the two.
Under the second approach, it can be said that when an owner allows an excepted use to be abandoned, there is no justifiable basis for treating him in a different manner from that in which others similarly circumstanced would be treated. Other persons desiring to operate an auto body shop in the North Plainfield business zone would be required to make application to the board of adjustment for an exception. The mere fact that a remote grantor, thrice-removed in this case, at one time had obtained an exception for a prohibited use which was subsequently abandoned does not relieve the present owner from the necessity of obtaining a new grant from the board in order to resume such use.
Even if we were to have agreed with defendant's counsel that an exception does not abate by abandonment, there remains as a bar to the present employment of the building as an auto body shop the fact that the use of the Newton Street building was intended and contemplated by both the original applicant and the board to be in conjunction with the operation of the Shell Station. Since that joint use has terminated, an essential basis for the continued enjoyment of the original exception has disappeared. The propriety of an independent operation at the Newton Street building under an exception has never been passed upon by the board.

III.
The defendant's third argument is that he has been operating an auto body shop at each address, not a motor vehicle service station as charged in the complaints. A *14 1948 amendment to the 1923 ordinance defines a motor vehicle service station as
"* * * any building, place or location * * * designed to supply motor vehicles with gasoline, oils, greases, automobile sundries, or for the inspection, testing and examination of said motor vehicles, or for the repair * * * or replacement of parts thereof, and shall include gasoline pumps and oil pumps * * *." (Emphasis added)
Perone's contention is that under this ordinance a service station is such only if it includes gasoline and oil pumps and that, therefore, his operation falls without the definition. But there are all kinds of service stations; some sell gasoline, and others do not. The reason for the "shall include" clause was obviously not to qualify the preceding definition but rather to ensure that stations selling gasoline but not making repairs would also be circumscribed, so as to obviate litigation as exemplified by Bauer v. Board of Fire and Police Com'rs of Paterson, 102 N.J.L. 235 (Sup. Ct. 1926), and Northern New Jersey Oil Co. v. Board of Adjustment of City of Newark, 6 N.J. Misc. 698 (Sup. Ct. 1928).

IV.
Lastly, defendant challenges the sufficiency of the standards guiding the board of adjustment in granting exceptions from the prohibition against service stations. The trial judge ruled, under the authority of Schmidt v. Board of Adjustment of City of Newark, 9 N.J. 405 (1952), that the standards were sufficient. In Schmidt there was also involved a provision of a local ordinance for the granting of special exceptions under N.J.S.A. 40:55-39(b). The standards there were that the board could recommend an exception for a service station if it would not be "detrimental to the health, safety, and general welfare of the community, and is reasonably necessary for the convenience of the community." 9 N.J. at pages 412, 419.
The ordinance in this case calls for a determination by the board as to whether the particular exception would be *15 "in harmony with [the] general purpose and intent" of the zoning ordinance. The North Plainfield ordinance, to the extent it has been reprinted in defendant's appendix, itself contains no declaration of purposes and policies. But the power of the board to grant an exception stems directly from the enabling statute, N.J.S.A. 40:55-39(b), and the exercise of such power need only be in keeping with the purposes of zoning regulations as set forth in R.S. 40:55-32. This is the logic of Ward v. Scott, supra, 11 N.J. 117, dealing with the discretion vested in the board by N.J.S.A. 40:55-39(c). It is equally compelling in this case.
Moreover, defendant has no standing here to complain of the exercise of an unbridled and arbitrary power by the board. If the machinery established by the ordinance governing special exceptions is declared an unlawful delegation of legislative power, defendant remains without any right under the challenged ordinance to the use for which he has been convicted.
We have considered the other points urged in support of a reversal and find them lacking merit. The convictions are affirmed.