23 A.3d 483

LARRY PRICE, PLAINTIFF–APPELLANT, v. MARTIN T. MARTINETTI, CONSTRUCTION CODE OFFICIAL OF THE CITY OF UNION CITY, AND 315 7TH STREET, LLC, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued June 7, 2011—Decided July 25, 2011.

Before Judges PARRILLO, YANNOTTI and SKILLMAN.

*Larry Price,* appellant, argued the cause pro se.

*Gregory F. Kotchick* argued the cause for respondent, *Martin T. Martinetti,* Construction Code Official of the City of Union City (*Durkin & Durkin,* attorneys; *Mr. Kotchick,* of counsel and on the brief).

*Joel M. Ellis* argued the cause for respondent, 315 7th Street, LLC (*Kates, Nussman, Rapone, Ellis & Farhi*, attorneys; *Michael B. Kates*, of counsel and on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D. (retired and temporarily assigned on recall).

The issue presented by this appeal is whether a landowner who obtains the land use approvals required for a development project, and subsequently obtains the land use approvals required for a different form of development project on the site, loses the benefit of the approvals authorizing construction of the originally planned project. We conclude that, at least in the absence of any ordinance or provision in the subsequent land use approvals conditioning those approvals upon rescission of the original approvals, a landowner that has obtained the approvals required for a development project different from the one originally approved retains the right to develop the property in accordance with the original plan.

I.

In 2004, the Union City Board of Adjustment granted an application by the predecessor in title to defendant 315 7th St., LLC (hereinafter referred to as "the developer") for the site plan approval and associated variances required for construction of a seven-story, twenty-unit apartment building on a 5,000–square–foot property. No action was brought challenging the Board's resolution granting those land use approvals.

Thereafter, the developer took steps to proceed with construction of the apartment building in accordance with those approvals, which included obtaining a demolition permit in December 2005 and a permit for construction of footings and a foundation in January 2006. Under the authority of those permits, the developer demolished an existing building and performed site preparation work on the property.

Around this same time, the developer decided to change its development plan and seek approval for construction of a much larger apartment building. To this end, the developer acquired additional adjacent lots totaling 5,000 square feet, thus increasing the size of the site to 10,000 square feet, and applied to the Board for the site plan and variance approvals required to construct an eighteen-story, eighty-four-unit apartment building on the enlarged site. The Board granted this application, but plaintiff brought an action challenging the approvals for the larger apartment building, which resulted in a Law Division decision invalidating those approvals.

The developer subsequently devised plans for a still larger (though not as tall) apartment building. To enable construction of that larger building, the developer acquired an additional 10,000 square feet of adjacent property, for a total 20,000–square–foot site, and applied to the Board for the site plan and variance approvals required to construct a fourteen-story, 129–unit apartment building. The Board granted this application, and plaintiff again brought an action challenging the approvals. The Law Division rejected this challenge and affirmed the Board's grant of the land use approvals required for construction of this larger apartment building. However, we reversed the Law Division in an unreported opinion and invalidated those approvals. *Price v. Rocha,* No. A–5420–06, 2008 *WL* 2938476 (Aug. 1, 2008).

At this point, the developer decided to abandon its plans for construction of a larger apartment building and to revert to its original plan for construction of a seven-story, twenty-unit apartment building, for which it had received the required land use approvals in 2004. In October 2008, the developer applied for and apparently obtained building permits for construction of that apartment building.

On January 27, 2010, the developer asked for a "partial release" related to "structure and framing," because of problems with financing, and on March 19, 2010, the developer informed the construction official that the construction had been proceeding

"slowly but continuously" since issuance of the building permit. On May 25, 2010, the construction official issued a "construction permit notice" to reflect the requested "partial release of structure and framing."

On September 27, 2010, plaintiff filed this action seeking to stop construction of the apartment building. Plaintiff's complaint asserted that the developer had "abandoned" the land use approvals for construction of the twenty-unit apartment building by applying for and obtaining the approvals for a larger apartment building. The complaint named the construction official and the developer as defendants.

The case was brought before the trial court by an order to show cause. The parties submitted written materials reflecting the land use approvals and building permits for construction of the twenty-unit apartment building and the land use approvals for the larger apartment buildings. After hearing argument, the trial court issued an oral opinion which rejected defendants' arguments that the action should be dismissed because it had not been filed within the forty-five-day period allowed by *Rule* 4:69–6(a) and was barred by the entire controversy doctrine.[1] However, the court concluded on the merits that the developer had not "abandoned" the land use approvals obtained in 2004 by seeking and obtaining the approvals required for construction of a larger apartment building. Accordingly, the court denied plaintiff any relief with respect to the continued construction of the apartment building and dismissed his complaint.

## II.

We assume, without deciding, that a municipality could adopt an ordinance which provides that subsequent land use approvals for a site result in rescission of any prior approvals or that a land use agency could condition its grant of a subsequent application for

---

[1] Defendants have not pursued those arguments on this appeal.

land use approvals upon the landowner's agreement to rescission of any prior approvals. *Cf. D.L. Real Estate Holdings, L.L.C. v. Point Pleasant Beach Planning Bd.*, 176 *N.J.* 126, 133, 820 *A.2d* 1220 (2003) (stating that "[o]rdinances that impose a time limit on the validity of a variance ... have been upheld notwithstanding that the MLUL does not grant expressly that authority"); *Ramsey Assocs., Inc. v. Bd. of Adjustment of Bernardsville*, 119 *N.J.Super.* 131, 132–33, 290 *A.2d* 448 (App.Div.1972) (stating that a time limitation within which construction authorized by variance must start may be established by ordinance or by "the variance itself"). However, Union City does not have such an ordinance, and the Board did not condition its grant of the approvals required to construct a larger apartment building upon the developer agreeing to rescission of its previously obtained approvals for the twenty-unit apartment building.

In fact, during the period the developer was applying for and obtaining the approvals required for construction of a larger apartment building and defending plaintiff's lawsuits challenging those approvals, there were communications between the developer and municipal officials that reflected their common understanding that the approvals for the twenty-unit apartment building were still in effect and that that development project would be pursued if the developer was unable to proceed with its plans for a larger apartment building. The developer's principal, Andre Rocha, submitted a certification stating that he had been assured in an April 2006 meeting with the Mayor and Construction Official that his company's pursuit of the approvals required for construction of a larger apartment building would not result in the invalidation of the 2004 approvals for the twenty-unit buildings:

At the meeting, I stated my concern that we not lose the ability to complete construction of the 20–unit plan if, for any reason, the Zoning Board did not approve the 129–unit plan.

7. At that meeting the City Planner David Spatz was contacted by telephone and the question was put to him. He replied that the former approval remained valid in the absence of language in the Resolution which would have voided it if another application was made involving the subject property.

8. Thus, I continued to pour money and effort in the development of the 20–unit project.

Thereafter, Rocha sent a series of letters to the Construction Official reaffirming his understanding that the 2004 approvals were still in effect and that his company was doing work under the authority of the permits issued pursuant to those approvals. One letter, dated January 4, 2007, stated: "Please be advised that we are continuing the work under the above permit, and the job has not stop[ped]!"; a second letter, dated November 28, 2007, stated: "Please be informed that there is a pending court decision concern[ing] the above project. Therefore, the job has been reduced to a minimum, and at this present moment, site preparation is complete"; and a third letter, dated May 14, 2008, stated: "Although we are still waiting for court decision that involves the above project, we have e[x]cavated the rear end of property as per foundation plan. However, no concrete pouring will be done until we have a legal decision from Court." Moreover, the Union City Building Inspector confirmed by memorandum dated September 16, 2008 that the permits for the continued construction of the twenty-unit apartment building remained valid.

Although the Board did not condition the grant of the subsequent approvals for construction of a larger apartment building upon rescission of the prior approvals for a twenty-unit building, and the developer and Union City officials had a mutual understanding that the prior approvals remained in effect, plaintiff nevertheless argues that the developer "abandoned" the prior approvals by obtaining the approvals required for construction of a larger apartment building. Plaintiff relies upon cases such as *Poulathas v. Atl. City Zoning Bd. of Adjustment*, 282 *N.J.Super.* 310, 660 *A.*2d 7 (App.Div.1995), dealing with abandonment of the right to continue a nonconforming use. However, even if that case law were applicable in the present context, plaintiff would not be entitled to prevail because abandonment of a nonconforming use will be found only if the landowner intended to abandon that use. *Id.* at 313, 660 *A.*2d 7; *see also S & S Auto Sales, Inc. v. Zoning Bd. of Adjustment for Stratford*, 373 *N.J.Super.* 603, 613–24, 862

*A*.2d 1204 (App.Div.2004). Thus, even if a landowner expands a nonconforming use illegally, he retains the right to continue the use in its original form because such expansion does not reflect an intent to abandon the original use. *Poulathas, supra,* 282 *N.J.Super.* at 313, 660 *A*.2d 7. Similarly, the series of communications between the developer and municipal officials demonstrates that the developer did not intend to abandon the approvals obtained for construction of a twenty-unit apartment building by applying for the approvals required for construction of a larger apartment building.

In any event, this appeal is not governed by the case law relating to abandonment of nonconforming uses, but rather by the provisions of the Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55D–1 to –163, relating to site plan approvals and variances.

The MLUL contains detailed provisions governing the contents of municipal ordinances dealing with site plan approvals. *N.J.S.A.* 40:55D–38, –39, –41, –42, –46, –49, –50, –51, –52, –53. Although the most common form of site plan review involves first preliminary and later final site plan approval, *N.J.S.A.* 40:55D–46, –50, the MLUL allows a municipality to combine this two-step process into a single proceeding in which a developer is granted both preliminary and final site plan approval at the same time, *see N.J.S.A.* 40:55D–51; *Aronowitz v. Planning Bd. of Lakewood,* 257 *N.J.Super.* 347, 366, 608 *A*.2d 451 (Law Div.1992); Cox & Koenig, *New Jersey Zoning & Land Use Administration* § 15–5.2 (2011), which is what Union City has done. There is no express authorization in the MLUL for a municipality to condition the grant of site plan approval upon a developer agreeing to rescission of a previously granted approval for the same site and, as previously discussed, the Board did not impose such a condition in this case.

Plaintiff places heavy reliance upon a statement in Cox, *supra,* § 15–52, that: "It seems clear that approval of a substantially revised site plan constitutes simultaneous abandonment of an earlier plan." However, this statement was made in the course of a discussion of the two-step process of "Preliminary and Final

Approval of a Major Site Plan." Consequently, the "substantially revised site plan" referred to in this quotation is a plan submitted for final approval that substantially revises a plan that received preliminary approval. *See Davis v. Planning Bd. of Somers Point,* 327 *N.J.Super.* 535, 541, 744 *A.*2d 222 (App.Div.2000) (stating that "substantial changes [on the site plan submitted for final approval] may require the developer to seek preliminary site approval again"). Since Union City operates a one-step approval process under which a developer is granted both preliminary and final site plan approval at the same time, this discussion of the effect of substantial changes in a site plan that has received only preliminary approval has no applicability to this case.

The MLUL also contains detailed provisions dealing with the granting of variances. *N.J.S.A.* 40:55D–70. There is nothing in those provisions indicating that a property owner who has obtained the variances required for one form of development loses the benefits of those variances simply by obtaining the variances required for a different form of development.

In *Industrial Lessors, Inc. v. City of Garfield,* 119 *N.J.Super.* 181, 183, 290 *A.*2d 737 (App.Div.), *certif. denied,* 61 *N.J.* 160, 293 *A.*2d 390 (1972), a panel of this court stated that "[a]lthough a variance can perhaps be lost by abandonment, . . . it otherwise partakes to a large degree of the characteristics of a vested right running with the land," and the Supreme Court quoted this statement with seeming approval in *Stop & Shop Supermarket Co. v. Board of Adjustment of Springfield,* 162 *N.J.* 418, 432, 744 *A.*2d 1169 (2000). However, the case cited for the proposition that "a variance can perhaps be lost by abandonment," *Borough of North Plainfield v. Perone,* 54 *N.J.Super.* 1, 11–13, 148 *A.*2d 50 (App. Div.), *certif. denied,* 29 *N.J.* 507, 150 *A.*2d 292 (1959), involved a situation where a landowner obtained an "exception" authorizing a prohibited use of his property but later discontinued that use and resumed a use permitted under the zoning ordinance. Under these circumstances, the court concluded that "an intervening use, consonant with the existing zoning design, breaks the chain of

circumstances so as to defeat the right automatically to resume the use originally sanctioned by the exception." *Id.* at 12, 148 *A*.2d 50. Thus, the court did not hold that simply applying for and obtaining variances for a different form of a development project would result in a loss of the right conferred by prior variances. It was only the actual use of the property in a manner different from the one authorized by the "exception" that resulted in its abandonment.

In contrast to *Perone,* the developer in this case never used its property in the manner authorized by the site plan approvals and variances required for construction of a larger apartment building, because plaintiff successfully challenged the validity of the resolutions granting those approvals. Thus, even assuming a property owner could be found to have abandoned a site plan approval and associated variances if it actually developed the property in accordance with subsequent land use approvals, that is not what occurred in this case. Therefore, there is no basis for finding that the developer abandoned the 2004 land use approvals. *See Dimitrov v. Carlson,* 138 *N.J.Super.* 52, 56, 350 *A*.2d 246 (App.Div.1975) (holding that "a use variance does not expire and is not lost simply by reason of the passage of time and non-exercise, absent an express time limitation set forth in the variance itself or in the zoning ordinance"), *certif. denied,* 70 *N.J.* 275, 359 *A*.2d 487 (1976); *see also* 3 *Rathkopf's The Law of Zoning and Planning* § 58:24 (Ziegler rev. 2011) (stating that "[t]he whole purpose of a variance is to enable a landowner to make reasonable use of his property, a right that should not be lost through failure to exercise it so long as circumstances remain the same.").

■ The conclusion that subsequent land use approvals for a development site do not result in automatic rescission of any prior approvals, unless the subsequent approvals were conditioned upon such rescission, is also supported by substantial policy considerations. One of the purposes of the MLUL is to encourage the most appropriate use of land. *See N.J.S.A.* 40:55D–2(a). Consequently, a landowner that has obtained the approvals required for

one form of development should not be precluded from seeking the approvals required for an alternative form of development the landowner considers more productive. If the landowner fails to make the showing required to obtain the approvals required for that alternative development, the land use agency can deny the application or a reviewing court can reverse the approvals. However, a landowner should not be inhibited from filing an application for an alternative development out of a concern that it will forfeit the prior approvals and then later be prevented from proceeding with development under the subsequent approvals because a reviewing court reverses those approvals.

It also should be kept in mind that although this appeal involves a commercial developer and the developer's motive in applying for the approvals required to construct a larger apartment building was undoubtedly monetary, the issue presented by this appeal could also arise in the context of an application for the land use approvals required for construction of a facility that would serve a public purpose. Suppose, for example, a hospital obtained the approvals required for construction of a new two-hundred-patient facility, but later decided it would like to seek the approvals required for construction of a three-hundred-patient facility because of the anticipated receipt of additional funding. If the hospital was uncertain whether it would actually receive that additional funding, it might be reluctant to forfeit the previously obtained approvals for the smaller hospital by applying for the approvals required to construct the larger hospital, which would be clearly contrary to the public interest. Therefore, we are unwilling to construe the MLUL in a manner that could lead to this result.

Affirmed.