92 N.J. Super. 293 (1966)
223 A.2d 210
HOUDAILLE CONSTRUCTION MATERIALS, INC., A NEW JERSEY CORPORATION, AND ALLIED CHEMICAL CORPORATION, A NEW YORK CORPORATION, PLAINTIFFS-RESPONDENTS,
v.
BOARD OF ADJUSTMENT OF TEWKSBURY TOWNSHIP, DEFENDANT-APPELLANT, AND JOSEPH BLAIR, BUILDING INSPECTOR OF TEWKSBURY TOWNSHIP, AND TOWNSHIP COMMITTEE OF TEWKSBURY TOWNSHIP, A MUNICIPAL CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1966.
Decided October 7, 1966.
*296 Before Judges CONFORD, FOLEY and LEONARD.
Mr. Richard H. Herold argued the cause for appellant (Messrs. Wharton, Stewart & Davis, attorneys).
*297 Mr. Clifford W. Starrett argued the cause for respondents (Messrs. Schenck, Price, Smith & King, attorneys).
The opinion of the court was delivered by CONFORD, S.J.A.D.
The Tewksbury Board of Adjustment appeals from a decision of the Law Division which vacated certain conditions which the board had imposed in granting an application of the plaintiffs for a special use permit under the local zoning ordinance for the construction and operation of a bituminous concrete plant. The Law Division held the plaintiffs were entitled to the permit free from the conditions, the latter (except for four not challenged in the action) being characterized by the court as arbitrary and unreasonable.
The present controversy concerns 6.42 acres of a much larger tract of land where for a long time plaintiff Houdaille has been operating a stone quarry. The concrete plant was to be operated by plaintiff Allied under a five-year lease from Houdaille of the smaller tract. The plant is essentially mobile and is to be transferred from another operating location out of the State.
The property in question is in a Mining (M) District of the municipal zoning ordinance. At the time of the application to the board the ordinance provided in section 4:6-2 that in an M district certain uses would be permissible, but only as "a special permit use," one being (b):
"Buildings, machinery and other facilities for the manufacture of prestressed concrete, bituminous concrete, dry concrete mixes and other concrete products, provided that:
i. A buffer strip, not less than five hundred feet in width, shall separate such buildings and uses from any agricultural or residential use within the Mining District, or from the boundary line of any district abutting the Mining District, whichever is closer to such buildings and uses;
ii. All the applicable performance standards of Article V and the Appendix shall be complied with fully as a condition to the continuance of such operations."
*298 Article V of the ordinance requires that every industrial or mining use or one conducted under a special use permit conform to the "applicable performance standards" set forth in the Appendix. The latter contain detailed criteria governing "Fire and Explosion Hazards; Fume and Gases; Disposition of Liquid or Solid Wastes; Smoke; Fly Ash; Dust; Noise; Vibration; Glare; Heat; and Radiation."
After an extended series of hearings by the board, including expression of considerable local opposition based on the anticipated failure of plaintiffs to comply with the performance standards and fear of effect of the new operation on local health and welfare, the board rendered a 3-2 decision that the "applicant has shown that it can comply with the ordinance standards specified" in the ordinance and that the permit should be granted, subject however to 14 stated conditions, 10 of which have been contested by plaintiffs below and here. The disputed conditions are as follows:
"(1) That the applicant and Barrett Division of Allied Chemical Company accept this permit within 60 days from the date hereof, and agree to comply with said restrictions and limitations.
(2) That said plant be operated no more than 200 days per year, five days per week; that no operation on Saturday and Sundays [sic].
(3) That the operation of said plant shall be only during daylight between the hours of eight and five p.m.

* * * * * * * *
(5) That the tests shall be made * * * no more than twice a year by a laboratory selected and retained by the Township to show complete compliance with the performance standards of said ordinance and these restrictions * * *. The cost of said test shall be paid by the applicant.
(6) That in case of any complaints by the Township or the State of New Jersey of breach of the performance standards of this ordinance, tests shall be made as outlined in 5 above for the account of the applicant to determine compliance.

* * * * * * * *
(8) That applicant shall use only Rockaway Road from County Road 523 as access to the plant, and said Rockaway Road shall be maintained by the Township, and the cost of said maintenance shall be paid by the applicant.
(9) The applicant shall use trucks either in or out of said plant having a gross weight of not more than 35 tons, and no more than 40 trucks per day in either direction shall visit said plant.

*299 * * * * * * * *
(12) This permit shall be for the time of the lease of 5 years.
(13) If it is necessary for the Township to take action, judicial or otherwise, to enforce this grant, the applicant shall pay all costs of the Township in such action.
(14) In case of any breach of this permit and the specifications and such breach is not cured within 30 days of notification of such breach, the Township may cancel this permit and applicant shall cease all operation."
Defendants argue that all of these conditions are reasonable and valid, but that if any are not, the court should either set aside the action of the board in its entirety or remand the matter for further proceedings by the board. Plaintiffs contend that under the peculiar provisions of this particular ordinance the board had no jurisdiction to impose conditions at all when granting a special permit use; alternatively, that the conditions were either "ultra vires or had no relation to zoning"; and that judicial proscription of the conditions does not warrant remand of the matter to the board as it has already determined that the proposed operation can comply with the legislated performance standards and should not be allowed now to deny a permit it has already properly determined to be issuable.

I.
We consider first whether the ordinance itself forbids conditions to be attached to a grant of a special use permit. Preliminarily, plaintiffs do not contend that boards of adjustment are basically without power to impose special conditions in granting or recommending variances or special uses under N.J.S.A. 40:55-39. The contrary is generally accepted. Borough of North Plainfield v. Perone, 54 N.J. Super. 1 (App. Div. 1959), certification denied 29 N.J. 507 (1959); Tullo v. Millburn Tp., 54 N.J. Super. 483, 490-491 (App. Div. 1959). 8A McQuillin, Municipal Corporations (3d ed. rev. vol. 1965), § 25.271, pp. 245-246.
In the present application, plaintiffs point to section 7:8-2 of the ordinance, which, in dealing with the powers of the *300 board of adjustment in relation to special permit uses, states that if after hearing the board "finds * * * that the proposed special use meets the requirements of this ordinance the board shall cause an appropriate special use permit to be issued by the zoning officer." They contrast that language with section 7:7 of the ordinance, dealing with "Special Exceptions" (as distinguished from "Special Use Permits") covering five categories of cases, generally in relation to nonconforming uses, where action by the board is expressly made subject to a determination that the exception "will not impair the integrity of the comprehensive zoning plan" (7:7-1) or involve "substantial detriment to the public good," etc., and the board is permitted to "impose appropriate conditions and safeguards for the purpose of maintaining the integrity of the comprehensive plan" (7:7-2).
By comparing the respective sets of ordinance provisions applicable to special permit uses and special exceptions, plaintiffs purport to find municipal legislative intent to make the former mandatory upon no more than a demonstration that applicant complies with the particular prerequisites specified therefor, as distinguished from special exceptions which are issuable only if the board of adjustment finds absence of "substantial detriment to the public good" and of impairment of the integrity of the zone plan, etc., and in respect of which the board is expressly allowed to fix appropriate safeguards and conditions.
We are not persuaded that, whatever may have been the actual intention of the framers of the ordinance, the municipality could curtail the power of the board of adjustment to condition the exercise of its power to pass upon applications for special permit uses, within N.J.S.A. 40:55-39 (b), by proper and appropriate particular conditions.
The only statutory source of the powers and duties of a board of adjustment applicable to its jurisdiction to pass upon either special permit uses or special exceptions uses under this ordinance is N.J.S.A. 40:55-39 (b) and the concluding omnibus clause of the section. Under (b) the board is *301 empowered to hear and decide requests for "special exceptions * * *" or for decisions "upon other special questions" upon which the board is authorized by the ordinance to pass. Clearly, this language encompasses both of the categories of uses concerning which plaintiffs seek here to draw a distinction. Thus both are plainly affected by the omnibus paragraph afore-mentioned which provides:
"No relief may be granted or action taken under the terms of this section unless such relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance."
Thus, regardless of the absence of specific language to that effect in the ordinance, the board of adjustment was required, in considering the instant application, to satisfy itself that the conditions specified in the concluding paragraph of the statutory section could be met. See also Tullo v. Millburn Tp., supra (54 N.J. Super., at pp. 496-497); LaRue v. Township of East Brunswick, 68 N.J. Super. 435, 456 (App. Div. 1961). It is probable that in attaching some or all of the 14 particular conditions to the grant of the special permit use, the board thought it was necessary for it to do so in order to prevent certain harms which are readily equatable to the statutory criterion "substantial detriment to the public good" or to guarantee compliance with the specific performance standards fixed in the ordinance. Whether those conditions are, for other reasons, objectionable, is another matter, discussed hereinafter.
Anent plaintiffs' argument presently under consideration, note the treatment in Tullo v. Millburn Tp., supra (54 N.J. Super., at p. 490), of "special exceptions," "special uses" and "special use permits" as all involving essentially the same generic type of situation.
We thus reject the plaintiffs' position that the board of adjustment was utterly without jurisdiction to attach special conditions to its general grant of plaintiffs' application.

*302 II.
We proceed to take up, seriatim, the particular conditions imposed by the board, objected to by plaintiffs and found invalid by the trial court. We refer to the paragraph numbers mentioned above in quoting the conditions.
(1) This condition is arbitrary in the absence of a general provision in the ordinance requiring all building or use permittees to signify acceptance within that time period. The municipality can by a reasonable ordinance provision limit the life of a building or use permit duly granted.
(2) Notwithstanding that plaintiffs' showing before the Board was that they expected to operate 200 days a year (because of weather limitations) the restriction to that figure in the decision was arbitrary. If weather permits more than 200 working days a year and no violation otherwise of the performance standards of the ordinance eventuates, there is no apparent justification for the restriction. However, the Saturday and Sunday prohibition is not per se invalid.
(3) This condition is arbitrary. Daylight hours vary seasonally and in relation to Daylight Saving Time. Plaintiffs have shown circumstances where business conditions peculiar to this industry might compel commencement of operations prior to 8 A.M. or subsequent to 5 P.M. A reasonable gross hourly limitation per day would not of itself necessarily be invalid.
(5) We regard this condition as reasonable and valid. Cost objections posed by plaintiffs are not substantiated.
(6) This condition is invalid. It could well be unwarrantably burdensome in the event of frivolous complaints.
(8) It was admitted at oral argument that the public road in question is used by others than plaintiffs and leads to a small village. There is no lawful justification to impose the entire cost of maintenance thereof on plaintiffs. Moreover, assessment of costs of road maintenance is not a matter of zoning within the purview of the board of adjustment.
*303 (9) This limitation is not justified by anything in the record and appears to arbitrarily limit the volume of plaintiffs' potential business. While there was some indication at the hearing that plaintiffs' operation would entail average truck movements of about 40 per day, that would patently be precluded by an absolute limitation of 40 trucks on any day (seemingly the conceded meaning of this condition).
Defendant seeks to generalize a justification for conditions (2), (3) and (9) as needed to assure a quantitative maximum of dust and noise conforming with the technical performance standards stated in the ordinance. However, it seems to us that under section 7:8-1 (c) of the ordinance the board is required to satisfy itself from the proofs one way or the other as to whether the proposed operation as submitted by the applicant will comply with the stipulated performance standards and to deny the special use permit if its conclusion is in the negative. It may not force plaintiffs' compliance with unwanted and otherwise illegal or arbitrary conditions in order to assure conformity with the performance standards of the ordinance.
(12) Plaintiffs do not argue that there is never any right in a board of adjustment to limit a variance or special use permit to a period of years, and we do not here determine whether or not such a limitation might in certain circumstances be unjustified. But the contention is that the limitation was ultra vires under this ordinance and in effect a nullification of plaintiffs' rights thereunder, in view of the expense of purchase and relocation of a bituminous concrete plant. It has already been noted that this plant is essentially mobile. It is therefore inferable that the expense of setting it up or removing it would be substantially less than in the case of a fixed plant. But of controlling importance, we regard the power to impose the limitation as reasonably incident to the board's responsibility to see to it, among other things, that the use not be attended by any substantial detriment to the public good. Ordinary tests as to compliance with particular performance standards might not be a totally satisfactory method of determining whether this industrial *304 operation would over the long run be harmful to the welfare of the municipality. An evaluation of the over-all results of a five-year experience with the plant by the community could possibly be more useful and would provide an escape-hatch if the board concluded that continuance of the plant thereafter was not consistent with the public good. The condition is valid.
(13) and (14). We regard these conditions as invalid on their face. Regulations of this type are for general legislation, not for ad hoc imposition upon the particular grantee of a special use permit.

III.
The nature of some of the foregoing conditions held herein to be invalid, especially (2), (3) and (9), and of their defense by the board on this appeal, leads to a substantial doubt that the board of adjustment would have been satisfied to conclude that the performance standards of the ordinance could be complied with by plaintiffs absent the imposition of such conditions. See North Plainfield v. Perone, supra (54 N.J. Super., at p. 11); Alperin v. Mayor, etc., of Middletown Tp., 91 N.J. Super. 190, 197 (Ch. Div. 1966). This also applies to the matter of the board's views (not expressed in its determination) as to satisfaction of the requirements of the omnibus clause of N.J.S.A. 40:55-39, referred to above. In view thereof, and of the close division of the board on the determination of the application, we are clear that the proper course consequent upon our concurrence in the invalidation of certain of the conditions imposed by the board is to remand the matter to the board so that it may redetermine whether the application should be granted free from the invalidated conditions. To this end the board should receive and consider any further proofs and argument the plaintiff or any other interested entity may desire to submit in the light of this opinion.
Reversed and remanded for further proceedings before the board of adjustment consistent with this opinion. No costs on this appeal.