857 A.2d 659 (2004)
372 N.J. Super. 203
Shree GAYATRIJI t/a the Anchor Motel, Plaintiff,
v.
The BOROUGH OF SEASIDE HEIGHTS PLANNING BOARD, Defendant.
Superior Court of New Jersey, Law Division, Ocean County.
Decided June 7, 2004.
*660 Anthony M. Pagano, Toms River, for plaintiff (Novins, York & Pentony).
Scott D. Thompson, Brick Town, for defendant (Wilbert, Montenegro & Thompson).
SERPENTELLI, A.J.S.C.
In this Action in Lieu of Prerogative Writs, the court revisits the troublesome and frequently puzzling issues surrounding conditions imposed on land use board approvals. In so doing, it attempts to review and reconcile the many decisions in this area that have differed in their analysis.
The plaintiff, Shree Gayatriji trading as the Anchor Motel (hereinafter "plaintiff" or "applicant"), seeks to reverse a decision of the Borough of Seaside Heights Planning Board (hereinafter "defendant" or *661 "Board") which denied the plaintiff's application for relief from a prior condition imposed by the Board concerning the use of the twenty-four-unit motel located on the plaintiff's premises.[1] By resolution dated January 28, 1998, the Board permitted an increase in rental units from the originally approved thirteen to twenty-four, notwithstanding that the additional eleven units had been added to the nonconforming use without any formal approval.[2] The relief was subject to a condition that the units be utilized only on a seasonal basis from April 1 to September 30 of each year. As a result of the Board's refusal to eliminate the seasonal restriction, the plaintiff filed this appeal.
The court's role in reviewing determinations of local planning boards or zoning boards is clearly defined by case law. The interpretation of a legislative enactment is purely a legal determination not entitled to a presumption. Since legal construction is a judicial function and not a matter of administrative expertise, the court is not obligated to give deference to the board's explication of the law. Cherney v. Matawan Zoning Bd. of Adj., 221 N.J.Super. 141, 534 A.2d 41 (App.Div.1987); Grancagnola v. Verona Planning Bd., 221 N.J.Super. 71, 533 A.2d 982 (App.Div.1987); Jantausch v. Borough of Verona, 41 N.J.Super. 89, 96, 124 A.2d 14, 18 (Law Div.1956), aff'd, 24 N.J. 326, 131 A.2d 881 (1957).
As to allegations that the Board has acted in an arbitrary, capricious or unreasonable manner, the rule is otherwise. Such boards are independent administrative bodies acting in a quasi-judicial manner. Dolan v. DeCapua, 16 N.J. 599, 612, 109 A.2d 615, 621-22 (1954). Their powers stem directly from statutory authority. Duffcon Concrete Products, Inc. v. Cresskill, 1 N.J. 509, 515-16, 64 A.2d 347, 351 (1949). Accordingly, a trial court must view the actions of the board as being presumptively correct. Rexon v. Bd. of Adj. of Haddonfield, 10 N.J. 1, 89 A.2d 233 (1952). Such boards, because of their peculiar knowledge of local conditions, must be allowed wide latitude in their delegated discretion. Ward v. Scott, 16 N.J. 16, 23, 105 A.2d 851, 855-56 (1954). The burden of proof rests with the challenging party, and the standard of review is whether the decision can be found to be arbitrary, capricious or unreasonable. Kramer v. Bd. of Adj. of Sea Girt, 45 N.J. 268, 212 A.2d 153 (1965). That decision must be made on the basis of what was before the board and not on the basis of a trial de novo. Antonelli v. Planning Bd. of Waldwick, 79 N.J.Super. 433, 440-41, 191 A.2d 788, 792-93 (App.Div.1963). A trial court is not authorized to substitute its judgment where the plaintiff fails to establish in the record its assertion of arbitrariness. The court has no right to consider the matter anew and substitute its judgment for that of the board. Peoples Trust Co. v. Hasbrouck Heights Bd. of Adj., 60 N.J.Super. 569, 573, 160 A.2d 63, 65-66 (App.Div.1959). The question remains whether, within this defined scope of review, the Board's decision can be sustained.
By resolution dated July 8, 1981, a previous owner of the Anchor Motel was granted site plan approval for the construction of an in-ground swimming pool, *662 including all necessary bulk variances. The relief was conditioned on the existing sixteen rental units being reduced to thirteen by December 1, 1981. The building violated certain bulk requirements of the zoning ordinance including front, rear and side yard setbacks and parking.
Approximately sixteen years later Harvey Levine, the then owner of the property, applied for a variance to permit twenty-four rental units together with two apartments. During the December 22, 1997 hearing, it was noted that sometime between 1981 and 1985, when a mercantile license was issued indicating that the building contained twenty-six rental units (apparently that included the two apartments), a conversion had taken place for which there appeared to be no official approval. It is conceded that the increase in the number of units from thirteen to twenty-four would have required Board action since, as noted, the 1981 approval limited the number of units to thirteen.
The testimony at the hearing centered around Levine's contention that the Borough had started to treat the motel as a twenty-six-unit structure as early as 1986 when it issued a mercantile license for the twenty-six units. A 1992 mercantile license reflected the same number. A tax assessor's work sheet was also introduced into evidence referring to twenty-six units, as well as a tax assessment sheet that reflected an evaluation based upon twenty-six units.
The hearing then focused on the question of whether Levine had properly relied upon the documentation he obtained in acquiring the premises in a mortgage foreclosure proceeding. Both counsel for the Board and the applicant engaged in extensive discussion concerning whether the Borough was estopped to deny the continued use of the twenty-six units or whether Levine should have done more to assure himself that the use conformed to the current approvals. Levine acknowledged that before the closing he was aware of the seasonal restriction and that he did not verify with any municipal official the conformity of the twenty-six units.
Ultimately, both sides, obviously unsure of their legal position, engaged in negotiations to bring about an acceptable resolution of the dilemma before them. A conversation ensued regarding conditions which would result in the continued use of the twenty-six units, but also ameliorate some Board members' concerns. The principal issue was the Board's desire to be assured that the rental units would only be utilized on a seasonal basis from April 1 through September 30 of each year. Levine indicated his willingness to accept that restriction. Nonetheless, the Board voted twice to deny the application before a satisfactory compromise was found which resulted in an approval including the seasonal use limitation.
At the conclusion of the proceedings, Levine was asked whether he was satisfied with the resolution. He responded that he was very satisfied and that it was "more than fair and more than reasonable." December 22, 1997 Tr., p. 98. One Board member responded that the Board "felt good" that night. Ibid. Another member suggested that Levine had gotten away with "murder" and that it was "Christmas time." Ibid.
Subsequently, Levine sold the property to the plaintiff in May 2002. The plaintiff then applied to the Board requesting the removal of the seasonal restriction, alleging that it violated N.J.S.A. 40:55D-68.1. That statute provides in part:
Any hotel, guest house, rooming house or boarding house which is situated in any municipality which borders on the Atlantic ocean in a county of the fifth or sixth class shall be permitted to operate *663 on a full-year basis notwithstanding section 55 of P.L. 1975, c. 291 (C. 40:55D-68) or any municipal ordinance, resolution, seasonal license, or other municipal rule or regulation to the contrary ....[3]
The hearing of November 25, 2002 addressed the viability of the seasonal use limitation which had been imposed by the 1998 resolution. The Board's memorializing resolution dated January 22, 2003 found in part:
a. The original condition of approval contained in the Resolution dated January 28, 1998, was imposed and agreed to by the prior applicant in an exchange for increasing the number of motel units from the thirteen originally on site [sic] to the 24 units that currently exist.
b. That condition was a result of comments made at a public hearing and were [sic] a voluntary waiver of rights by that applicant in order to obtain an increased number of rooms, which increase was well beyond the number permitted by zoning ordinances.
c. It is the Board's position that based upon the substantial increase of use on this relatively small lot, and the lack of sufficient on-site parking, which was also discussed as part of this increased use, the condition was reasonable.
The Board also concluded that the relief could not be granted since, in its opinion, the applicant had failed to demonstrate that the condition was violative of the statute or that granting the relief would benefit or otherwise enhance the zone plan.
New Jersey case law has not been always consistent in its treatment of conditions on land use approvals. There are two critical issues considered in these decisions. The threshold question is whether the conditions are valid. The more difficult determination is how a finding of invalidity affects the underlying approval. As to the first inquiry, the validity of the condition, the court believes that the prevailing law is well summarized in 3 Rathkopf, The Law of Zoning and Planning, Sect. 40.04 (4th ed. 1987):
Generally, conditions imposed must be directly related to and incidental to the proposed use of the land and must be without regard to the person who owns or occupies the land.
... To be valid, conditions must (1) not offend any provision of the zoning ordinance; (2) not require illegal conduct on the part of the permittee; (3) be in the public interest; (4) be reasonably calculated to achieve some legitimate objective of the zoning ordinance; and (5) not be unnecessarily burdensome to the landowner.[4]
While no single New Jersey decision comprehensively enunciates these principles, *664 a composite of the holdings dealing with the issue of validity of such conditions conforms to the analysis contained in Rathkopf. N. Plainfield v. Perone, 54 N.J.Super. 1, 8-9, 148 A.2d 50, 54-55 (App.Div.), certif. denied, 29 N.J. 507, 150 A.2d 292 (1959); V.F. Zahodiakin v. Zoning Bd. of Adj. of Summit, 8 N.J. 386, 86 A.2d 127 (1952); Houdaille v. Bd. of Adj. of Tewksbury Tp., 92 N.J.Super. 293, 223 A.2d 210 (App.Div.1966); State v. Farmland  Fair Lawn Dairies, Inc., 70 N.J.Super. 19, 174 A.2d 598 (App.Div.1961); certif. denied, 38 N.J. 301, 184 A.2d 417 (1962); Alperin v. Mayor and Tp. Committee of Middletown Tp., 91 N.J.Super. 190, 219 A.2d 628 (Ch.Div.1966); Orloski v. Planning Bd. of the Borough of Ship Bottom, 226 N.J.Super. 666, 545 A.2d 261 (Law Div.1988), aff'd, 234 N.J.Super. 1, 559 A.2d 1380 (App.Div.1989).
As noted, the plaintiff argues that the condition imposed in the 1998 resolution expressly violates state law and contravenes the intent of the statute, which is to increase beach access by allowing hotels, guest houses, rooming houses and boarding houses to extend their season of operation. Senate, No. 3336; L. 1989, c. 67. The defendant's response is somewhat unclear. It appears that the Board is arguing that the statute is not mandatory or preemptive. It contends that a party may choose either to exercise the option to operate on a full-year basis or to operate seasonally. The Board asserts that if the statute creates an option, a party can surrender or waive it as a quid pro quo for receiving relief to which it might not otherwise be entitled.
The truth is that the statute is clear on its face. To the extent that there is any discretion, it would simply be that a hotel owner could choose, notwithstanding the right to operate on a full-year basis, to forgo that privilege. However, there is nothing in the statute that suggests that the Board could prohibit the motel owner from asserting the statutory right or ask the owner to waive it. Therefore, it is clear that the condition contravenes the legislation. Thus, the court must turn to the critical issue, namely, what are the consequences of excising the illegal condition from the Board's prior approval. A review of the many decisions in this area provides some guidance, though not total clarity.
The analysis begins with V.F. Zahodiakin Eng'g v. Summit Zoning Bd. of Adj., supra, 8 N.J. at 395-96, 86 A.2d 127, 132 in which the Supreme Court held that both the variance and accompanying condition were void. The zoning board had granted the plaintiff a variance to operate a war-related laboratory in a residential zone on the condition that upon sale, bankruptcy, discontinuance of use or other contingencies, the variance would terminate. Id. at 390, 86 A.2d at 129. The plaintiff sought relief from the condition eight years later when the laboratory was no longer needed. Id. at 394, 86 A.2d at 131. The Court held that, besides the condition being void, the action of the board was so irregular that it lacked jurisdiction to grant the variance; thus it was invalid as well. Id. at 395, 86 A.2d at 132. The Court stated that the zoning board never attempted to apply the statutory criteria, but was acting "to effectuate a contractual undertaking for private benefit" of the plaintiff. Ibid. The Zahodiakin opinion condemned the concept of granting a variance to the property owner as opposed to the land itself, stating:
It was not within the province of the local authority here to vest in the landowner by contract a special privilege or exemption to use its premises in violation of the general rule binding upon all other landowners within the zone.
[Ibid., 86 A.2d at 131-32]
*665 The next case to grapple with the issue of variance conditions was N. Plainfield v. Perone, supra, 54 N.J.Super. at 5, 148 A.2d at 52. in which the Appellate Division upheld the defendant's municipal convictions for violating the variance restrictions and sustained the validity of the conditions attached to the variance. The defendant's predecessor in title obtained a variance to operate an auto repair shop, subject to the conditions that the entrance had to be through a side road, no cars could be parked outside of the garage and work could be done only in the garage. The defendant argued that the limitations were invalid. Though the court upheld the conditions, it commented upon the defendant's arguments, stating, "[w]e cannot assume that the exception would have been granted in the first place if [the condition was not attached] .... So long as that exception continued in effect, the conditions which were imposed in connection therewith were inseparable from the right of enjoyment of the exception." Id. at 10-11, 148 A.2d at 55.
In Houdaille Const. Materials v. Bd. of Adj. of Tewksbury Tp., 92 N.J.Super. 293, 223 A.2d 210 (App.Div.1966), the plaintiff received a "special use permit" to operate a stone quarry but the approval was subject to fourteen conditions. The plaintiff challenged ten of them. The trial judge ruled that the conditions were invalid and that the plaintiff was entitled to the permit free of the restrictions. Id. at 297, 223 A.2d at 212. The Appellate Division agreed but remanded the matter to the board to determine whether the special permit would have been granted without the limitations. Id. at 304, 223 A.2d at 216-17.[5] The court noted that the board was split 3-2 in its decision to grant the special permit and that the nature of some conditions left substantial doubt that the board would have been satisfied that the performance standards would have been met without the controls. Thus, the court directed that the board should be given the opportunity to determine whether the application should be granted free from the invalidated conditions. Ibid.
DeFelice v. Point Pleasant Beach Bd. of Adj. 216 N.J.Super. 377, 523 A.2d 1086 (App.Div.1987). was the first case in which the Appellate Division apparently departed from its prior analysis regarding invalid conditions. The owner of a residential lot had two homes located on the premises. One home burned down and the owner applied for a variance to reconstruct the house.[6] The variance was granted with the condition that if the property was sold or the owner died, the board could require, if it deemed it advisable, the demolition of "any of the buildings erected on the premises...." Id. at 380, 523 A.2d at 1087.[7]
The plaintiffs acquired the property at a foreclosure sale and contended neither *666 they nor the real estate agent was aware of the condition. They were later notified that the property was in violation of zoning ordinances. Ibid. The Appellate Division held that the condition was invalid because it made the variance personal to the original owner, but the variance itself, since it was otherwise "without infirmity," was valid. Id. at 383, 523 A.2d at 1089. The court held that N. Plainfield and Zahodiakin were inapplicable since they involved conditions on how the property was to be used, compared to the condition before the court, which concerned a limitation on who used the property. Id. at 382, 523 A.2d at 1088.
In Orloski v. Ship Bottom Planning Bd., 234 N.J.Super. 1, 559 A.2d 1380 (App.Div.1989), the plaintiffs were granted a bulk variance conditioned upon their agreement not to seek a subdivision in the future. Notwithstanding the restriction, the plaintiffs applied for a subdivision. The trial court held that, under the circumstances of the case, the condition was valid. Alternatively, the court found that even assuming its invalidity, it should be binding because the plaintiffs agreed not to seek a subdivision, they never appealed that decision, they enjoyed the benefit of the variance and the board would not have granted the relief absent the condition. The court concluded that "[s]ince the variance cannot be undone, the condition should not be stricken, even if it is deemed invalid." Orloski v. Ship Bottom Planning Bd., 226 N.J.Super. 666, 679, 545 A.2d 261, 268 (Law Div.1988).
The Appellate Division affirmed the trial judge's ruling but, in dicta, declined to agree with what it perceived to be the trial court's inference that an invalid condition could not be severed without voiding the variance to which it was attached. Orloski, supra, 234 N.J.Super. at 1-2, 559 A.2d 1380, 1381. The Appellate Division suggested that "an unreasonable condition, under proper circumstances, may be stricken or removed even if the variance benefit has been accepted." Id. at 2, 559 A.2d at 1381. The court found that its holding in DeFelice was applicable to those situations in which the restrictions imposed were invalid but, in the language of DeFelice, the underlying variance "is otherwise without infirmity." Orloski, 234 N.J.Super. at 2, 559 A.2d at 1381, quoting DeFelice, supra, 216 N.J.Super. at 383, 523 A.2d at 1089.
Berninger v. Midland Park Zoning Bd. of Adj. 254 N.J.Super. 401, 603 A.2d 954 (App.Div.1991). is the most recent instance in which the Appellate Division focused on this issue. The original owners of a home were given an exception or variance in 1939 to use it as a two-family dwelling, with a condition that upon the sale of the property it would revert to a single-family use. Id. at 402-03, 603 A.2d at 955. The owners subsequently died and in 1960 the property was sold. At that time, neighbors expressed concerns about the permitted use of the dwelling, but the issue was not pursued. In 1988, the property was offered for sale again and the plaintiffs complained to the zoning officer that the dwelling should return to a single-family use. Id. at 403, 603 A.2d at 955. The zoning officer agreed, but when the owners sought review of that decision, the zoning board reversed. On appeal, the trial judge ruled that the condition was void, but that the variance was also void because there was no proof that the board acted properly in granting the variance. Ibid.
The Appellate Division disagreed. First, it noted that a condition that limits the life of a variance to ownership by a particular individual is patently illegal because it does not advance a legitimate land use purpose. Id. at 405, 603 A.2d at 956. Citing DeFelice, the court found that *667 it had previously excised an unlawful condition without setting aside the underlying variance. It referred to the earlier dicta in Orloski that an unreasonable condition "under proper circumstances" could be voided even if the benefits of the variance had been accepted. Berninger, supra, 254 N.J.Super. at 405, 603 A.2d at 956. After attempting to distinguish the holdings in N. Plainfield and Zahodiakin, the court found that the record did not disclose what proofs were presented to the board to justify the variance. However, it also concluded that the burden of proof was on the objector to demonstrate that the variance granted was unsustainable. The Appellate Division stated, "[T]he proofs [were] insufficient to permit a determination that no other reason supported the grant of the exception, or that the then-existing ordinance was not satisfied by the evidence presented." Berninger, supra, 254 N.J.Super. at 407, 603 A.2d at 957. The court continued:
We conclude that the admittedly invalid condition attached to the two-family use, granted in 1939, must be excised. We are satisfied that the consequences of permitting the two-family use to continue without the excised limitation do not require its invalidation. There is no evidence that the use, if continued without the limitation, would alter the character of the neighborhood or do violence to the zoning plan. Fifty years of continuous two-family occupancy supports this conclusion.
[Ibid.]
In a strong dissent, Judge Gaulkin argued that the burden should be on the landowner to show that the variance approval, without the unlawful condition, was justifiable. He noted that in only three reported cases had the courts invalidated unlawful conditions and determined the viability of the underlying variance.[8] Conversely, most of the other cases had upheld the conditions and thus were not required to address whether the variance could survive their excision. Id. at 408-09, 603 A.2d at 958. Judge Gaulkin emphasized that, until DeFelice, the cases had reasoned that if the conditions are to be declared unlawful, the variances upon which they were engrafted must be set aside. In so doing, they relied on several rationales:
1. The board intended the condition to be inseparable from the right of enjoyment of the variance.
2. The landowner could have appealed if dissatisfied with the condition.
3. The landowner understood and accepted the limited relief and should be estopped from attacking it.
4. There can be little doubt that the variance would not have been approved but for the board's assumption that the condition was valid and would be sustained.
[Id. at 410, 603 A.2d at 959.]
Judge Gaulkin asserted that those considerations should remain "relevant and weighty even though DeFelice and Orloski have rejected the view that variances must be set aside if attached conditions are declared unlawful." Id. at 410, 603 A.2d at 959. He concluded that in determining whether there are "proper circumstances" to sustain a variance after the deletion of the condition, those factors must still be recognized. Berninger, supra, 254 *668 N.J.Super. at 410, 603 A.2d at 959, quoting Orloski, supra, 234 N.J.Super. at 2, 559 A.2d at 1381. He asserted, "In the absence of any contrary showing, those considerations powerfully suggest that the variance should not survive the excision of the attached condition." Id. at 410, 603 A.2d at 959.
This review of the case law demonstrates that most of the decisions in this area have been greatly influenced by the peculiar facts and circumstances of each matter. By their nature, these cases create strong equitable pulls that influence the court's analysis. The imposition of a restriction on the grant of a variance frequently establishes what might loosely be called a "condition subsequent," an event that may occur at some unpredictable time in the future. As can be seen from the discussion of the authority in this area, the event may not transpire for decades. In that circumstance, the court can be faced with a barren record. The option of a remand is severely limited by the passage of time and a complete change in the composition of the board that granted the relief imposing the condition.
Thus, no bright line has been established which dictates the consequence of a court finding a condition invalid. However, an analysis of the case law suggests some general principles. With the exception of the DeFelice decision and the majority position in Berninger, the other cases have typically considered the factors recited in Rathkopf and Powell, discussed earlier, to determine the threshold issue of whether the condition is valid. Thereafter, if the limitation is found invalid, in determining the ramifications, the cases other than DeFelice and the majority in Berninger have focused on the four rationales that Judge Gaulkin's dissent characterized as "relevant and weighty." Berninger, supra, 254 N.J.Super. at 410, 603 A.2d at 959. Again, those considerations are (1) whether the board intended the condition to be inseparable from the right of enjoyment of the variance, (2) the landowner's failure to appeal the condition, (3) the principles of estoppel and (4) whether the board would have granted the variance if it knew the condition would be invalidated.
The DeFelice court and Berninger majority take a different approach. Both relied upon the well-established maxim that variances can only be granted to the land, not landowners. Therefore, the condition in each case limiting the life of the variance to the continued ownership of the applicant was patently unlawful. However, in assessing the effect of that finding on the variance approval, neither decision considered the factors summarized in Judge Gaulkin's dissent but rather concluded that the variance should stand because it was otherwise "without infirmity" (DeFelice, supra, 216 N.J.Super. at 383, 523 A.2d at 1089) or the objectors failed to demonstrate that the variance without the condition was "unsustainable." (Berninger, supra, 254 N.J.Super. at 407-08, 603 A.2d at 957-58).[9]
In this court's view, the unique factual context of DeFelice and Berninger strongly influenced their result. In DeFelice, the condition was imposed to allow the applicants merely to restore the use of the *669 premises for two dwellings which had been lost when one of the homes was destroyed by fire. The board apparently considered that to be a sufficient hardship to grant the relief to the applicants but sought to confine the variance to them because two dwelling uses on one property may have become a nonconforming use. Years later, the plaintiffs acquired the premises in a foreclosure sale and were completely unaware that this condition existed. Assumedly, the condition was never made a part of the chain of title. Again, in Berninger, the condition made the variance personal to the landowner. It was imposed in 1939 and title to the property had already changed twice before enforcement of the condition occurred in 1988. Indeed, the Berninger majority specifically noted that it found virtually no record to assist in reviewing the basis for the condition and additionally reasoned that the use complained of was not out of character with the neighborhood. In short, the overriding equities in both cases seemed to induce the result.
The case before this court more readily fits into the traditional analysis of the other decisions, including the dissent in Berninger, reviewed in this opinion. The record of the December 22, 1997 hearing clearly demonstrates that the Board intended the condition to be inseparable from the variance and that Levine, the prior property owner, would not have received the variance to use the property as a twenty-four-unit motel unless it was restricted to seasonal use. As noted, Levine did not challenge the condition. Indeed, he invited it as part of a compromise to achieve his main objective, which was the validation of the motel use that had mysteriously grown from the thirteen rental units approved by the Board in 1981 to the twenty-four units existing at the time of the application. Levine obviously understood and readily accepted the seasonal limitation and other conditions with this goal in mind. In fact, a fair reading of the transcript suggests that not only did the applicant invite the condition but, in a sense, it was self-inflicted. Cf. State v. Farmland-Fair Lawn Dairies, Inc., 70 N.J.Super. 19, 24, 174 A.2d 598, 601 (App.Div.1961).
Notwithstanding Levine's agreement, the Board twice voted to deny the application before a compromise was found which resulted in the granting of the variance subject to limitations. In the language of the cases considered above, the record leaves little doubt that the Board would not have approved the variance but for the Board's assumption that the condition was validly imposed under the circumstances and that it would be sustainable on appeal.
The record is also clear that the present owner knew of the limitation before completing the purchase of the motel. The plaintiff may argue that if the Board rejected Levine's variance application, Levine could have appealed on the theory of estoppel. In the first instance, Levine never fully developed the facts to support his estoppel argument at the 1997 hearing because he agreed to the condition that the twenty-four units only be operated seasonally. Additionally, Levine testified that the bank from which he purchased the property notified him before closing that the motel owner never received permission to expand from thirteen to twenty-four units. A finding of estoppel by a court was by no means a certainty.
Therefore, the court concludes that both the seasonal use condition and the variance itself must fall. The plaintiff has the options of returning to the Board to seek the same relief without the condition, or perhaps to present a different proposal or, as stipulated by the Board's counsel, the *670 plaintiff can restore the thirteen-unit use and operate it on a year-round basis.
NOTES
[1] The record is inconsistent in its description of the number of units in the building. The parties agree that there are twenty-four rental units to which the disputed condition applies and two apartments to which the condition does not apply.
[2] The motel is a permitted use but the structure did not conform to some of the bulk requirements at the time of the approval.
[3] The statute requires any owner who wishes to operate a hotel, guest house, rooming house or boarding house on a full-year basis to file with the Commissioner of Community Affairs information which will demonstrate fulfillment of the inspection requirements of state law and verify that there is at least one such use within the municipality operating on a year-round basis. Those issues were not pursued at the hearing below though it appeared to be assumed that the applicant could comply so that the Board proceeded in the absence of the approval by the Commissioner of Community Affairs. It is conceded that there are other uses within the Borough covered by the statute which are operating on a full-year basis.
[4] A similar test was referred to by the court in DeFelice v. Point Pleasant Bd. of Adj., 216 N.J.Super. 377, 381, 523 A.2d 1086, 1088 (App.Div.1987), citing 6 Powell on Real Property, Part V, Sect. 872.2[2], 79C-483 (1979).
[5] Unfortunately, the opinion does not give any dates or time-line, though it appears that the plaintiff attacked the conditions immediately after the variance was granted. Furthermore, it appears that the court remanded the matter to the same board that granted the variance. In the case before this court, a new owner is attacking a condition approximately six years after it was granted by a predecessor board to a previous owner.
[6] The decision is silent as to why a variance was necessary. It might be assumed that the zoning ordinance in effect at the time of the fire permitted only one residential structure per lot, otherwise even the total destruction of the house would not have necessitated a use variance application to reconstruct the second residence.
[7] Again, the opinion is silent, but it might be assumed that the resolution meant that one of the two buildings on the premises could be subject to removal since clearly at least one residential structure was permitted on the lot and there is no indication that any bulk violations were present.
[8] Two of those cases, Zahodiakin, supra, 8 N.J. 386, 86 A.2d 127 (variance voided) and DeFelice, supra, 216 N.J.Super. 377, 523 A.2d 1086 (variance sustained), have been discussed previously. Judge Gaulkin cited Soho Park & Land Co. v. Belleville Bd. of Adj., 6 N.J.Misc. 683, 142 A. 547 (Sup.Ct.1928) (variance sustained), as the third case and found that it provided "no guidance." Berninger, supra, 254 N.J.Super. at 408, 603 A.2d at 958.
[9] It should be noted that Berninger is the only case placing the burden of proof on the objector (the party wishing to have the variance terminate) to establish that the variance is "unsustainable." Normally, as in the present case, the land use board is seeking to have the variance terminate if the condition is deemed invalid. The question remains whether a literal reading of the Berninger decision would put a board in the awkward position of having to prove that the variance it granted was "unsustainable"  that is, arbitrary, capricious or unreasonable.