**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0170-16T4

GERTRUDE WALSH,

    Plaintiff-Respondent,

v.

CITY OF CAPE MAY PLANNING
BOARD,

    Defendant-Appellant,

and

CHRISTOPHER HEIN,

    Defendant/Intervenor-
    Respondent.

_____

        Argued September 27, 2017 — Decided October 17, 2017

        Before Judges Nugent and Geiger.

        On appeal from Superior Court of New Jersey,
        Law Division, Cape May County, Docket No. L-
        0434-15.

        Richard M. King, Jr., argued the cause for
        appellant.

        Christopher M. Baylinson argued the cause for
        respondent Gertrude M. Walsh (Perskie Mairone
        Brog Barrera & Baylinson, PC, attorneys; Mr.
        Baylinson, of counsel and on the brief).

Christopher D. Hein, respondent, argued the cause pro se.

PER CURIAM

Defendant City of Cape May Planning Board (the Board) appeals an August 1, 2016 order granting an owner, plaintiff Gertrude Walsh, relief in an action in lieu of prerogative writs. The Law Division nullified the Board's denial of a bulk variance that plaintiff had sought for a residential parcel pursuant to N.J.S.A. 40:55D-70(c)(2). Having concluded the Board could have reasonably reached its decision on adequate evidence in the record before it, we vacate the Law Division's order and reinstate the Board's decision.

I.

The pertinent facts and procedural circumstances are as follows. Walsh has owned residential property located in Cape May, New Jersey (the property) for approximately thirty-eight years. The property is 120 feet wide and 100 feet deep. It is improved with a one and one-half story residence, garage structure and two off-street parking spaces.

Walsh applied to the Board for minor subdivision approval to subdivide the property into two lots for the construction of two single family homes. The 12,000 square foot property is located in an R-3A medium density residential district. Cape May's zoning

ordinance imposes a 6,250 square foot minimum lot size in R-3A zone districts. Consequently, the application also sought a (c)(2) variance pursuant to N.J.S.A. 40:55D-70(c)(2) for each proposed 6,000 square foot lot because each fell 250 square feet below the minimum lot area requirement.

The Board heard Walsh's application on August 25, 2015. Harold E. Noon, Jr., a licensed professional planner and surveyor, testified on behalf of Walsh. Craig R. Hurless, a licensed professional engineer, professional planner, and certified municipal engineer, testified on behalf of the Board. Four local residents and an attorney representing a fifth local resident participated during the public comment period.

Noon testified, generally, that in the same block as the property, there are nine lots smaller than the proposed lots and ten undersized lots. He noted that in the area immediately outside of the block, there are forty-three lots smaller than the proposed lots, nine that are the same size, and only two that are larger. Noon stated that the several nearby lots were only 4,000 or 5,000 square feet.

Noon indicated that the houses in the neighborhood range from as small as 1,300 square feet to as large as 2,500 square feet. Based on the current maximum floor area ratio for an R-3A zone, a 4,800 square foot residence could be constructed on the existing

3

12,000 square foot parcel. Noon maintained that a residence that large would overshadow everything around it and be out of character for the neighborhood, thereby causing a negative impact.

Noon further opined that the proposed 6000 square foot lots, which are only four percent below minimum lot size, would be more harmonious and fit into the character of the neighborhood, thereby preserving its character and benefitting the community. Noon also claimed that the proposed lots would not be detrimental to the neighborhood and, therefore, the benefits outweighed any detriment.

Relying on the Supreme Court decision in Kaufmann v. Planning Board for Warren, 110 N.J. 551, 563 (1988) and an unpublished opinion, Walsh argued that where an area is dominated by a certain lot size, and the proposed lots mirror what the dominant sizes are, the benefits of the harmonious lot sizes outweigh the detriments.

Hurless, who serves as the Board's engineer, testified: "There is an existing single-family dwelling and what's indicated as a guest house that currently exists on the property." He indicated that both existing structures would be demolished to construct two new homes, each having a floor area of 2181 square feet. Hurless further testified that certain conditions, which are not pertinent to this appeal, should be conditions of approval.

The reference to a guest house on the property related to one of Walsh's submissions. Noticeably absent from the record is any testimony or evidence that there is a non-conforming guest house on the property. Indeed, Noon did not mention or offer any opinion that the structure was a non-conforming guest house. During oral argument in the Law Division, Walsh contended for the first time that the purported guest house was a non-conforming use that would be eliminated if the variance and subdivision were approved.

Four members of the public who owned parcels within 200 feet of the property, including intervenor Christopher D. Hein, testified in opposition to the application.

Hein argued that there was no objection when the 6250 square foot minimum lot size was adopted in 2004. Nor was there an objection when the R-3A zone districts were created in 2005. Hein noted that the applicant had more than ample opportunity to oppose those zoning changes, since she owned the property for thirty-eight years.

Hein further argued that if approved, this would be the first subdivision in this area in the last sixty years. The proposed lots would be the smallest lots on the street, with side yards reduced by one-half. He pointed out that the proposal would undermine several goals of zoning, decreasing light, air, and open

space.  He indicated that the proposal would also negatively impact congestion and parking, making the street much more hazardous.

Joseph Gloviak, who resides on the same street as Walsh, testified that the proposed development would make the existing flooding and inadequate storm protection conditions on the street even worse.

An attorney on behalf of Martha Robinson and John Azar, who also reside on the same street, remarked that it is a very small, quaint, quiet street, which would be changed by the proposed development.  He also voiced concern about the precedential impact if the application were granted.

The Board denied the application by a vote of three to five and memorialized its findings and decision in Resolution No. 10-13-2015:1.  The Resolution incorporated the following findings pertinent to this appeal:

> 18.  The Board finds that the purposes of the Zoning Ordinance of the City of Cape May as set forth in Section 525-2B(1) through (14) and of the Municipal Land Use Law of the State of New Jersey enumerated in N.J.S.A. 40:55D-2(a) through (p) would not be advanced by granting a variance to deviate from the requirements of Section 525-16.1B(1) Table 1 []minimum lot size requirement of the Zoning Ordinance because the Board finds that the applicant has failed to establish a special reason that would advance those purposes.  The Board finds that the creation of two undersized lots in the R-3A Medium Density District which would result in the

construction of 2 single family dwellings on Swan Avenue which is a narrow street and a unique neighborhood and that such development is contrary to the master plan adopted by the City. The Board finds that the proposed development does not create a more harmonious condition in the neighborhood than the current condition of the property.

19. The Board further finds that the criteria set forth in N.J.S.A. 40:55D-70[c](2) has not been satisfied and that there are no benefits to the community in the applicant's proposal and that the only benefits are to the applicant. In addition, this benefit to the applicant of subdividing the property which would permit the construction and sale of 2 dwelling units is substantially outweighed by the detriment to the community that would result from the increase in traffic, parking on Swan Avenue and the creation of additional nonconformities in the Zoning District and City. The area in which the applicant's property is located is part of Frog Hollow which is the lowest part of town and is prone to flooding. The Board determines that the best way to preserve the character of the neighborhood is to maintain the current configuration of the property. The Board also finds that the applicant has failed to satisfy the negative criteria because the application cannot be granted without substantial detriment to the public good and such variance relief would impair the intent and purpose of the zone plan and Zoning Ordinance. The Zone plan as reflected in the master plan which has been updated and in which it is determined what the minimum lot size in the R-3A Zone for a single family dwelling; the master plan and Zoning Ordinance did not determine the minimum lot size to be what the applicant is proposing. The applicant's proposal does not meet any of the goals or objectives of the master plan or zoning ordinance.

On September 8, 2015, Walsh filed an action in lieu of prerogative writs, alleging that the Board's decision was arbitrary, capricious, and unreasonable. Following a hearing, the Law Division judge issued an order and written memorandum of decision, reversing the Board. This appeal followed.

## II.

"Our standard of review for the grant or denial of a variance is the same as that applied by the Law Division." Advance at Branchburg II, LLC v. Branchburg Twp. Bd. of Adjustment, 433 N.J. Super. 247, 252 (App. Div. 2013). Specifically, "when a party challenges a zoning board's decision through an action in lieu of prerogative writs, the zoning board's decision is entitled to deference." Kane Props., LLC v. City of Hoboken, 214 N.J. 199, 229 (2013). We grant planning boards "wide latitude in the exercise of delegated discretion" due to "their peculiar knowledge of local conditions[.]" Price v. Himeji, LLC, 214 N.J. 263, 284, (2013) (quoting Kramer v. Bd. of Adjustment for Sea Girt, 45 N.J. 268, 296 (1965)).

We give even greater deference to a planning board's decision to deny a variance. Nextel of New York, Inc. v. Borough of Englewood Cliffs Bd. of Adjustment, 361 N.J. Super. 22, 38 (App. Div. 2003) (citing Northeast Towers, Inc. v. Zoning Bd. of Adjustment for W. Paterson, 327 N.J. Super. 476, 494 (App. Div.

2000)); <u>Med. Ctr. at Princeton v. Twp. of Princeton Zoning Bd. of Adjustment</u>, 343 <u>N.J. Super.</u> 177, 199 (App. Div. 2001). "That heavier burden requires the proponent of the denied variance to prove that the evidence before the board was 'overwhelmingly in favor of the applicant.'" <u>Nextel of New York, Inc.</u>, <u>supra</u>, 361 <u>N.J. Super.</u> at 38 (quoting <u>Northeast Towers</u>, <u>supra</u>, 327 <u>N.J. Super.</u> at 494).

The scope of judicial review is limited "to determin[ing] whether the board could reasonably have reached its decision." <u>Davis Enterprises v. Karpf</u>, 105 <u>N.J.</u> 476, 485 (1987). Therefore, a court generally "will not substitute its judgment for that of a board 'even when it is doubtful about the wisdom of the action.'" <u>Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor Twp.</u>, 172 <u>N.J.</u> 75, 81 (2002) (quoting <u>Cellular Tel. Co. v. Zoning Bd. of Adjustment for Harrington Park</u>, 90 <u>F. Supp.</u> 2d 557, 563 (D.N.J. 2000)). "[C]ourts ordinarily should not disturb the discretionary decisions of local boards that are supported by substantial evidence in the record and reflect a correct application of the relevant principles of land use law." <u>Lang v. Zoning Bd. of Adjustment for N. Caldwell</u>, 160 <u>N.J.</u> 41, 58-59 (1999). The Board's conclusions of law, however, are subject to de novo review. <u>Nuckel v. Little Ferry Planning Bd.</u>, 208 <u>N.J.</u> 95, 102 (2011).

A-0170-16T4

When reviewing a board's decision, we presume its factual determinations to be valid, and we will only reverse if the decision is arbitrary, capricious, or unreasonable. Kane Props., supra, 214 N.J. at 229. That decision must be made on the basis of what was before the board and "not on the basis of a trial de novo, by affidavit or otherwise, before the Law Division." Antonelli v. Planning Bd. of Waldwick, 79 N.J. Super. 433, 440-41 (App. Div. 1963); Gayatriji v. Borough of Seaside Heights Planning Bd., 372 N.J. Super. 203, 207 (Law Div. 2004). Matters outside the record of proceedings before the Board may not be considered by the court. See Adams v. Delmonte, 309 N.J. Super. 572, 583 (App. Div. 1998); Kempner v. Edison, 54 N.J. Super. 408, 417 (App. Div. 1959).

Walsh applied for a (c)(2) variance from the minimum lot size required in an R-3A zone district. The Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, authorizes local zoning and planning boards to grant variances from zoning ordinances. Here, the relevant MLUL provision is N.J.S.A. 40:55D-70(c)(2), which prescribes in pertinent part:

> [W]here in an application or appeal relating to a specific piece of property [it is shown that] the purposes of this act . . . would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment, [the Board may] grant a variance

> to allow departure from regulations pursuant to article 8 of this act; provided, however, that the fact that a proposed use is an inherently beneficial use shall not be dispositive of a decision on a variance under this subsection[.]

"N.J.S.A. 40:55D-70(c)(2) permits a variance for a specific property, if the deviation from bulk or dimensional provisions of a zoning ordinance would advance the purposes of the zoning plan and if the benefit derived from the deviation would substantially outweigh any detriment." Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 30 (2013).

Our courts refer to the balancing of benefit and detriment as proving "the positive and negative criteria." Ibid. (citing Nash v. Bd. of Adjustment of Morris Twp., 96 N.J. 97, 106 (1984)) "The applicant bears the burden of proving both the positive and negative criteria." Ibid.

To qualify for a (c)(2) variance, the applicant must demonstrate that "the purposes of the MLUL would be advanced, the variance can be granted without substantial detriment to the public good, the benefits of the variance will outweigh any detriment, and that the variance will not substantially impair the intent and purpose of the zoning plan and ordinance." Jacoby v. Englewood Cliffs Zoning Bd. of Adjustment, 442 N.J. Super. 450, 471 (App.

Div. 2015) (citing <u>Wilson v. Brick Twp. Zoning Bd. of Adjustment</u>, 405 <u>N.J. Super.</u> 189, 198 (App. Div. 2009)).

Importantly, our Supreme Court has emphasized that a (c)(2) variance should not be granted when only the purposes of the owner will be advanced. <u>Kaufmann</u>, <u>supra</u>, 110 <u>N.J.</u> at 563. Instead, the variance must actually benefit the community by allowing a better zoning alternative for the property. <u>Ibid.</u> The focus of a (c)(2) case, then, is not "on the characteristics of the land that, in light of current zoning requirements, create a 'hardship' on the owner warranting a <u>relaxation</u> of standards, but on the characteristics of the land that present an opportunity for <u>improved</u> zoning and planning that will benefit the community." <u>Ibid.</u>

In short, the granting of a "(c)(2) variance will stand if, after adequate proofs are presented, the Board concludes that the 'harms, if any, are substantially outweighed by the benefits.'" <u>Jacoby</u>, <u>supra</u>, 442 <u>N.J. Super.</u> at 471 (quoting <u>Kaufmann</u>, <u>supra</u>, 110 <u>N.J.</u> at 565).

An application for a bulk variance under subsection (c)(2) frequently implicates several purposes of the MLUL,

> including to encourage a municipality to guide development in a manner that will promote the health, safety, and welfare of its residents, <u>N.J.S.A.</u> 40:55D-2(a); . . . and to provide "adequate light air, and open space," <u>N.J.S.A.</u>

12

40:55D-2(c). A municipality is also authorized to guide development that will promote "a desirable visual environment," N.J.S.A. 40:55D-2(i), and to establish "appropriate population densities," N.J.S.A. 40:55D-2(e).

Ten Stary Dom P'ship, supra, 216 N.J. at 30-31.

Site conditions, including the impact of the variance on the risk of flooding, storm runoff, traffic congestion, and limited available on-street parking, are legitimate concerns when the proposed variance implicates those conditions. See id. at 38 (concerning drainage and risk of flooding); Kali Bari Temple v. Bd. of Adjustment of Twp. of Readington, 271 N.J. Super. 241, 251 (App. Div. 1994) (concerning traffic and parking). Likewise, a subdivision which creates two lots harmonious in size with neighboring properties may also be a valid consideration. See Kaufmann, supra, 110 N.J. at 565.

### III.

With these standards in mind, we turn to the Board's arguments. The Board raises two main issues for our consideration: (1) the trial court reversed the Board based upon an inaccurate description of the record regarding surrounding lot sizes and an unsupported finding that the current use is non-conforming; and (2) the Board was not obligated to grant the variance. Hein raises two additional arguments for our consideration: (1) the trial

13

court erred in allowing the applicant to supplement the record with new and unsubstantiated evidence, and by substituting its own opinions and judgment for the express findings of the Board in denying the variance and subdivision; and (2) existing case law does not support the trial court's reversal of the Board's decision to deny the variance application.

The Board found that Walsh failed to meet the positive criteria of the statute. Departing from that finding, the judge found that "Walsh's proposed subdivision will eliminate a non-conforming use and structure while creating only a [de minimis] (4%) deviation from the minimum lot area requirement." The judge concluded that the proposed subdivision satisfied the positive criteria for a (c)(2) variance "by creating more harmonious lot sizes and eliminating a non-conforming use and structure." We disagree.

As the court noted in Kaufmann, "no c(2) variance should be granted when merely the purposes of the owner will be advanced." 110 N.J. at 563. Rather "[t]he grant of approval must actually benefit the community in that it represents a better zoning alternative for the property." Ibid. Here, the board had an ample basis to conclude that the benefits claimed by Walsh are insubstantial or non-existent. The Board reasonably determined that the construction of two new homes on a narrow street would

14

not result in a more harmonious condition in the neighborhood and would be contrary to the master plan.

The judge found that Walsh satisfied the positive criteria, in part, because the proposed subdivision would eliminate a non-conforming use in the form of a guest house. In reaching that conclusion the judge stated: "Walsh's home sits side-by-side with a guest home and garage." The judge further stated that Walsh's expert, Noon, opined that the proposed lots "would eliminate the separate guest house which is a non-conforming use[.]" Although Walsh made such arguments to the judge, the record before the Board does not support them. The record contains only a single fleeting reference to a guest house, which appears to have stemmed from that term being used on one of the applicant's submissions, rather than by competent evidence presented to the Board. Walsh's expert did not even mention the guest house. The record is otherwise devoid of any reference to a non-conforming guest house or its elimination. Thus, a fact central to the court's decision had never been properly developed on the record before the Board, which became the record before the Law Division.

We also part company with the judge's rejection of the Board's finding that Walsh's application failed to meet the negative criteria of the statute. "The requirement that the grant of the variance not 'substantially impair the intent and purpose of the

A-0170-16T4

zone plan and zoning ordinance' focuses on whether the grant of the variance can be reconciled with the zoning restriction from which the applicant intends to deviate." Lang, supra, 160 N.J. at 57 (quoting Medici v. BPR Co., 107 N.J. 1, 21 (1987)). In Lang, the Supreme noted that "reconciliation of a dimensional variance with the zone plan and zoning ordinance is a relatively uncomplicated issue, and depends on whether the grounds offered to support the variance, either under subsection c(1) or c(2), adequately justify the board's action in granting an exception from the ordinance's requirements." Ibid. at 57-58.

The Board rejected plaintiff's contention that granting its application for a variance would not result in "substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70. In overturning that finding, the trial judge found that proposed subdivision would create only a de minimis four percent deviation from the minimum lot area requirement. On this point, we again conclude that the judge should have accorded the Board more deference.

In attempting to negate the Board's concern that the subdivision of her property would result in a substantial detriment to the surrounding properties, plaintiff notes that the proposed subdivided lots would deviate no more than four percent from the

minimum lot size requirement. While that may be so, the Board did not act arbitrarily or capriciously in finding these deviations to be significant nonetheless. If viewed in a different numeric manner, each proposed lot would be 250 square feet below the minimum size. The Board was not obligated to treat that shortfall as negligible.

Walsh also emphasizes that several other nearby lots are smaller than 6250 square feet. The Board was entitled to consider the cumulative negative impact of creating additional undersized lots on the neighborhood in light of the master plan's goal of controlling population density.

We are satisfied that the Board's decision to deny the variance was not arbitrary, capricious or unreasonable and was supported by substantial evidence in the record. The proofs here demonstrate that the variance would advance the purposes of the owner rather than the community. Walsh did not meet her burden of demonstrating that the community will benefit due to improved zoning if the variance is granted. See Loscalzo v. Pini, 228 N.J. Super. 291, 304 (App. Div. 1988), certif. denied, 118 N.J. 216 (1989).

In sum, the Board did not act arbitrarily in reaching its considered assessment that Walsh's variance application did not fit within the "very narrow band of cases" in which a (c)(2)

variance is warranted.  <u>Kaufmann</u>, <u>supra</u>, 110 <u>N.J.</u> at 560.  Adhering to our limited scope of review, we conclude the Board could have reasonably reached its decision on the competent evidence before it.  <u>Davis Entrs.</u>, <u>supra</u>, 105 <u>N.J.</u> at 485.  We therefore reverse the Law Division's decision and reinstate the denial of the variance by the Board.

Reversed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION